**In the Matter of HAUTE CUISINE, INC., Debtor(s).**

**Bankruptcy No. 85–2034.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 23, 1986.

Mark A. Petche, Tampa, Fla., for Old Hyde Park Village Center, Ltd.

Jeffrey Warren, Tampa, Fla., for debtor.

## ORDER DENYING MOTION FOR REHEARING

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case and the matters under consideration are a Motion for Rehearing of this Court's Order Extending The Time To Assume Or Reject Lease entered on October 22, 1985 (Extension Order). The issue before the Court is whether the lessor, Old Hyde Park Village Center, Ltd. (Old Hyde Park), under the facts in this case, is entitled to a decree declaring the forfeiture of valuable property rights of the Debtor under a non-residential lease based on § 365(d)(4) of the Bankruptcy Code. This Motion To Assume And Assign Lease Agreement was initially presented to the Court at a hearing on October 30, 1985, however, this Court deferred consideration pending completion of an evidentiary hearing which was held on November 15, 1985.

The facts, as developed at the final evidentiary hearing, are basically without dispute although the interpretation of those facts is not, and they can be summarized as follows:

On January 5, 1984, Old Hyde Park as lessor, and the Debtor as lessee, entered into a lease agreement regarding property described as Tenant Store No. E38, Block E, Old Hyde Park Village located in Tampa, Florida (the Lease Agreement). The Lease Agreement provided that the Debtor would lease property from Old Hyde Park for the purpose of operating a restaurant on said premises for a period of one hundred and nineteen months.

Prior to the Debtor's filing of its Petition for Relief under Chapter 11 on July 31, 1985, the Debtor and Old Hyde Park were involved in an ongoing dispute regarding the amount of rent owed by the Debtor to Old Hyde Park. The terms of the Lease Agreement provided that the Debtor was entitled to reduced rent as a result of a major construction project instituted by Old Hyde Park surrounding the site of the Debtor's restaurant, which construction was under way at the time relevant. The Debtor claimed that it was entitled to a reduced rental amount as the construction severely interfered with its ability to conduct its restaurant business which, in turn, had a serious adverse affect on its business and ultimately caused the Debtor's financial difficulties. The Debtor and Old Hyde Park proposed to settle their dispute through an assignment of the leased premises to a third party who was to buy all assets of the Debtor. The Debtor submitted as a prospective assignee, AT & T Restaurants, Inc., for approval, however, Old Hyde Park rejected this assignee.

In order to get out of a difficult situation, the Debtor, prior to filing its Chapter 11 petition, engaged in preliminary negotiations with one Dan Harvey who proposed to purchase the Debtor's rights under the leasehold and to take over the operation of the restaurant at the location under the name of Harvey's Hyde Park Grill, Inc. (Harvey's). The testimony of David Gibson, President of the general partner, Amlea of Florida, Inc., the agent of Old Hyde Park in this matter, confirmed that Old Hyde Park joined in with the Debtor in these early negotiations with Harvey.

After the filing of the Debtor's Petition for Relief on July 31, 1985, Old Hyde Park filed a Motion to Dismiss the Petition on August 12, 1985. The Motion stated that the restaurant had been closed since June 14, 1985, showed no signs of being re-opened, and that there was an absence of reasonable likelihood of rehabilitation of the Debtor. Old Hyde Park, after filing its Motion to Dismiss, negotiated with the Debtor and Harvey which negotiation culminated in a settlement agreement whereby the Debtor agreed to consent to the entry by this Court of an order granting the Motion to Dismiss; agreed to assign its leasehold interest to Harvey with Old Hyde Park's consent; and agreed to sell all assets of the restaurant operation to Harvey. The assignment and sale would be consummated outside the Bankruptcy Court after the Chapter 11 case was dismissed.

Old Hyde Park acknowledged that Harvey would be an acceptable assignee of the lease, provided certain conditions were met. These conditions included the requirement that Harvey meet all terms and conditions of Old Hyde Park and that it will execute a five year guarantee of the Lease Agreement concomitantly with the assignment. Additionally, Harvey was required to substitute himself in the place of the Debtor and obtain release of the Debtor on certain secured debts owed to Park Bank. Old Hyde Park and the Debtor further agreed that, assuming the above-mentioned conditions were satisfied by Harvey, all disputes and claims regarding rental payments owed to Old Hyde Park by the Debtor would be released.

Prior to the hearing on Old Hyde Park's Motion to Dismiss, Harvey's counsel concluded that the sale and assignment to Harvey should be better accomplished in the Chapter 11 proceeding and with the approval of this Court. This alternative mode to accomplish the settlement was accepted by the Debtor and Old Hyde Park. On September 24, 1985, a Motion to Withdraw its Motion to Dismiss was filed by Old Hyde Park, which stated that Old Hyde Park and the Debtor had undertaken nego-

tiations with a third party (Harvey) regarding an assignment of the lease for the Debtor's premises, and that pending successful resolution of the negotiations, Old Hyde Park would have no basis for requesting dismissal of the Debtor's petition. Subsequent to filing its Motion To Withdraw Motion To Dismiss Case, Old Hyde Park filed a Notice of Withdrawal of Motion to Dismiss in which Old Hyde Park acknowledged that it had notice that the Debtor intended to assume the Lease Agreement, since such assumption was a prerequisite to an assignment of the lease to a third party. Additionally, testimony adduced at the hearing indicated that Old Hyde Park, the Debtor, and Harvey were continuously negotiating an assignment arrangement.

Although negotiations between Harvey and the Debtor continued, Old Hyde Park, on October 1, 1985, filed a Motion for Ex Parte Order Granting Relief From Stay (Stay Motion). In the Stay Motion, Old Hyde Park asserted that since the Debtor had neither assumed nor rejected the unexpired lease, and since the time for assumption or rejection under § 365(d)(4) of the Bankruptcy Code had already expired, the lease was deemed rejected as a matter of law and it was entitled to immediate possession of the premises.

Despite the filing of the Stay Motion, the Debtor, Old Hyde Park, and Harvey continued negotiations for the sale of assets and assignment of the Lease Agreement. On October 21, 1985, the Debtor filed the Motion to Assume and Assign Lease Agreement and a Motion to Extend the Time to Accept or Reject the Lease. On October 22, 1985 the Order on the Motion to Extend the Time to Accept or Reject the Lease was entered by this Court and a hearing to approve the sale of assets and the assignment was set for October 30, 1985. At that hearing the Debtor advised this Court that all of the conditions for the sale of assets and assignment had not been satisfied and presented a letter from Harvey which indicated that the agreement still could be consummated. Old Hyde Park urged that the Lease Agreement was already rejected,

therefore, the Debtor was no longer in the position to assign the lease. As a result of the position taken by Old Hyde Park, an impasse developed in the negotiated assignment of the Lease Agreement to Harvey since Old Hyde Park refused to consent to the assignment without a five year personal guarantee from Harvey. Harvey refused to guaranty the lease, therefore, the agreement with Harvey was terminated and Harvey withdrew from the transaction. The Debtor continued its efforts to find a buyer and was successful in obtaining a new proposed assignee, Jesse's Tavern of Old Hyde Park (Jesse's), who agreed to give the guaranty required by Old Hyde Park and agreed to be substituted on terms more favorable to the Debtor.

As noted earlier, Old Hyde Park now contends that because the Debtor failed to effectively assume the lease prior to the expiration of the sixty days required by § 365, the lease is deemed to have been rejected, therefore, the Debtor is no longer in the position to assign the lease. § 365(d)(4) of the Bankruptcy Code provides that if a non-residential lease agreement is not assumed within sixty days after the date of the order for relief, or within such additional time as fixed by the Court within the sixty days, then at the expiration of such sixty days, the lease is deemed rejected and the trustee or debtor-in-possession shall immediately surrender such non-residential property to the lessor.

■ Where sixty days may be an insufficient amount of time for the debtor-in-possession or trustee to make an informed decision on whether to assume or reject an unexpired lease, ordinarily there is no question that the debtor must seek authorization to assume an unexpired lease prior to the expiration of sixty days from the filing of the petition in order to escape automatic termination under § 365(d)(4) of the Bankruptcy Code unless the time is extended within the sixty days by the Court. *In re By-Rite Distributing, Inc.*, 47 B.R. 660, 12 BCD 1082 (Bankr.D.Utah 1985). The purpose for requiring the debtor-in-possession

or trustee to obtain an extension prior to expiration of the sixty day period "is to preclude this Court from retroactively extending the time for assumption upon a retroactive application by the trustee". *In re Capellen,* 39 B.R. 40 (Bankr.S.D.Fla. 1984). Thus, the purpose of the sixty day provision is to avoid delay and uncertainty with regard to lease assumption decisions, such that a lease which has not been assumed or rejected at the expiration of the sixty day period is deemed rejected. Once the lease has been deemed rejected, § 365(d)(4) does not allow an extension of time to permit assumption. Since the sixty day termination rule of § 365(d)(4) was enacted for the benefit of lessors and is intended to protect them from unreasonable risks occasioned by the precarious financial condition of the lessee-debtors. It is evident that the lessor may waive the application of § 365(d)(4), or in certain cases, may be estopped from enforcing its application on equitable grounds. See *Larkins v. Sills,* 377 F.2d 1, 3 (5th Cir.1967) and *In re Capellen, supra.*

A waiver requires (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, a benefit. A waiver may be expressed or implied from conduct. However, when waiver is implied from conduct, such conduct must make out a clear case of waiver. *Matter of Garfinkle,* 672 F.2d 1340, 1347 (11th Cir.1982).

The Debtor concedes, as it must, that it did not seek authorization to assume the lease within the sixty day period but contends that the sixty day period for assumption or rejection has been waived by Old Hyde Park when it filed its Motion To Withdraw Motion To Dismiss and waived its right to insist on the strict application of § 365(d)(4). The record is clear that Old Hyde Park was aware of the Debtor's intention to assume the Lease Agreement, and in addition, it is estopped to insist on forfeiture of the lease based on its conduct. Old Hyde Park was actively involved in the negotiations of the Debtor and both prospective assignees. If old Hyde Park wished to object to the Debtor's assumption of this lease, it should have done so. Instead, it filed its Motion To Withdraw its Motion to Dismiss within the sixty day period and represented to this Court that lease assignment negotiations were ongoing and if successful, its Motion will no longer be necessary. Further, there is no question that Old Hyde Park recognized that its actions regarding the assumption and assignment of the Lease Agreement might give rise to a waiver or estoppel when it attempted to obtain an agreement from the Debtor that it will not assert the defense of a waiver or estoppel. This proposed provision was part of an Escrow Agreement to implement the assignment and assumption which Old Hyde Park offered to the Debtor prior to the October 30, 1985 hearing.

The defense of estoppel is an equitable principle and is based on acts or conduct of a party against whom it is invoked. It needs no extensive citation of authority that a court of bankruptcy is a court of equity, and, as such, is guided by equitable principles. The doctrine of equitable estoppel applies to prevent,

> [A] party from raising a claim or taking a legal position when his conduct with regard to that claim is contrary to his position. Estoppel requires (1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) willfullness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated.

*Matter of Garfinkel,* 672 F.2d 1340 (11th Cir.1982).

In *Capellen, supra,* the trustee's delay in assuming the lease was prompted merely by a delay in negotiations with the prospective purchaser. In refusing to extend the time for assumption on the theory of equitable estoppel, the Court noted that the delay in negotiations was "in no way attributable to the landlord". In this case, the evidence is sufficient to convince the Court

that the Debtor's delay in seeking court approval for the lease assignment or in seeking a timely extension of the time within which to assume or reject, was caused by the initial agreement by Old Hyde Park that the lease assignment would be accomplished outside of bankruptcy. The Debtor asserts that the parties agreed that the petition for relief under Chapter 11 would be dismissed contemporaneously with the assignment of the lease to Harvey and the execution of mutual releases with regard to the disputed rental agreements. In reliance upon this initial agreement, the Debtor did not file a motion for approval of the lease assumption and consequent assignment prior to the expiration of the sixty day period on September 30, 1985. Thus, it is clear that the actions of the landlord induced the Debtor to forego compliance with the statutory mandate of obtaining court approval of its decision to assume the executory contract. Therefore, the Debtor contends that it would be unjust to allow the landlord to rely upon application of § 365(d)(4) which operates to extinguish valuable rights under the Lease Agreement and the doctrine of equitable estoppel must be applied.

This leaves for consideration an additional contention of Old Hyde Park that the terms of the Lease Agreement permit Old Hyde Park to give or withhold required consent to the assignment of the lease; therefore, the Bankruptcy Court, in its sole discretion, cannot approve an assignment of the Lease Agreement without the consent of Old Hyde Park.

This contention is equally without merit. Florida has adopted the well accepted concept that a lease is a contract and, as such, should be governed by the general contract principles of good faith and commercial reasonableness and a lessor may not arbitrarily refuse consent to an assignment of a commercial lease. *Fernandez v. Vazquez*, 397 So.2d 1171 (Fla. 3rd DCA 1981).

■ Based on the foregoing, this Court is satisfied that Old Hyde Park caused the Debtor to believe that the prospective assignee, Harvey, would be acceptable to Old Hyde Park; that the conditions outlined by Old Hyde Park would be satisfied by Harvey; and that the lease assignment would be executed concomitantly with the Debtor's dismissal of its Chapter 11 petition. Old Hyde Park, with full knowledge that the Debtor had not applied to the Court for an order approving assumption of the lease, nevertheless, continued to participate in the negotiations with Harvey and stated that if an agreement is reached it will not insist on dismissal, causing the Debtor to rely on such conduct to its detriment and causing it not to comply with the requirments of § 365(d)(4). Under these circumstances it would be unfair to allow Old Hyde Park to raise the § 365(d)(4) presumptive rejection argument.

The remarks stated in this opinion shall not be construed, however, to be an indication by this Court that the Debtor has already established its right to assume this lease and has complied with the conditions precedent for assumption required by § 365(b)(1)(A)(B)(C).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Rehearing of this Court's Order Extending The Time To Assume Or Reject Lease be, and the same hereby, is denied.